FILED
2014 Jul-07  AM 09:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| JAMES ALLEN FORESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:12-cv-04094-VEH-JEO |
| | ) |
| SERGEANT BRUCE T. HODGES, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, James Allen Forester , has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at St. Clair Correctional Facility in Springville, Alabama.  Plaintiff names as defendants Sergeant Bruce T. Hodge, Correctional Officer Justin Guthery, and Correctional Officer Christopher Dixon.[1] Plaintiff seeks monetary and injunctive relief.

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

---

[1] Defendant Bruce Hodge was incorrectly identified as Bruce Hodges in plaintiff's complaint.

# I.  PROCEDURAL HISTORY

On July 12, 2013, the court entered an Order for Special Report, directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of plaintiff's complaint. (Doc. 10.)  The court advised defendants that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*Id.*)  By the same order, the court advised plaintiff that after he received a copy of the Special Report submitted by defendants, he should file counter-affidavits if he wished to rebut the matters presented by defendants in the Special Report.  (*Id.*)

On October 11, 2013, defendants filed a Special Report accompanied by affidavits and other institutional documents. (Doc. 25.) The court notified plaintiff that defendants' Special Report would be construed as a motion for summary judgment and he would have twenty (20) days to respond by filing affidavits and other material if he chose.  (Doc. 32.) Plaintiff was also advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Plaintiff filed a response to defendants' motion for summary judgment on January 8, 2014.  (Doc. 32.)

## II.  SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prime facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts

> immaterial."   Thus, under such circumstances, the public
> official is entitled to judgment as a matter of law, because the
> plaintiff has failed to carry the burden of proof.   This rule
> facilitates the dismissal of factually unsupported claims prior
> to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986)).   However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must

be considered in opposition to summary judgment.   *See Perry v. Thompson*, 786 F.2d

1093, 1095 (11th Cir. 1986).

## III.   SUMMARY JUDGMENT FACTS

Based on the foregoing summary judgment standard, the following facts are

undisputed or, if disputed, taken in a light most favorable to plaintiff.[2]

On November 22, 2012, at about 10:00 p.m., plaintiff was in the infirmary to have

a bandage changed near his groin area.  (Compl. at 9.)  Sergeant Bruce Hodge and Officer

Justin Guthery were assigned to escort segregation inmates, including plaintiff, to the

infirmary.  (Doc. 25, Ex. 5, Guthery Aff. at 1.)  Officer Christopher Dixon was seated

behind a desk in the infirmary.  (Doc. 25, Ex. 4, Dixon Aff. at 1.)

Although Nurse Ferris treated the inmates before plaintiff, once it was his turn,

Nurse Ferris informed Defendant Hodge that she was finished and that the inmates could

leave.  (*Id*.)  Defendant Hodge instructed plaintiff to return to segregation.  (Doc. 25, Ex.

---

[2] Factual disputes made by defendants are addressed in footnote form.

2, Hodge Aff. at 1.)   Plaintiff was upset that he had not been treated and became belligerent and began yelling. (Compl. at 9; Doc. 25, Ex. 2, Hodge Aff. at 2.)  Plaintiff stated, "That's what's wrong with these S.O.Bs now[.]  They have been let go for [too] long and had their way with us."  (Compl. at 9.)

As plaintiff was walking to the exit door, Defendant Hodge walked up to plaintiff, twisted his shirt into a ball and pushed him against the wall of the infirmary.  (Compl. at 9.)  Defendant Hodge ordered plaintiff to stand still and shut up.  (*Id*.)  Plaintiff told Defendant Hodge not to put his hands on him because he had not done anything towards him or his officers and that he was upset with the medical staff.  (*Id*.)  Defendant Hodge stated that he realized that but told plaintiff again to stand still and be quiet while he continued to hold plaintiff against the wall.  (*Id*.)

Plaintiff's pants were falling down around his waist and his left pants leg was under his shoe.  (Compl. at 9.)  He was sliding on the floor as a result, so he picked up his left leg to pull his pants from under his shoe.  (*Id*.)  Defendant Hodge yelled, "'He kick[ed] me!'" (*Id*.)  Plaintiff states that he did not kick Defendant Hodge and if he touched Hodge in any way, it was by accident while trying to pull his pants leg from under his shoe.  (Doc. 25, Ex. 3 at 8.)  Defendants Dixon, Guthery, and Hodge then "slammed" plaintiff to the infirmary floor even though he was in handcuffs and leg irons. (Compl. 9; Doc. 32 at 2.)  Defendant Hodge put his knee in plaintiff's back and started

5

striking him about the face and head with his closed fists and repeating, "'You want more?'" (*Id.*)  Defendant Hodge continued beating plaintiff until Hodge became tired. (Compl. at 9-10.) Defendant Hodge then picked plaintiff up from the floor and asked him if he had had enough.[3]  (Compl. at 10.)

---

[3]  Defendant Hodge claims that plaintiff became upset because he had not be treated in the infirmary.  (Doc. 25, Ex. 2 at 2.)  Hodge states that he placed his hand on plaintiff's shoulder in an escort position to try to guide him back to segregation and repeated his order for plaintiff to return to the unit.  (*Id.*) Defendant Hodge states that instead of complying, plaintiff turned around and kicked Hodge on the leg.  (*Id.*)  In response, Defendant Hodge placed plaintiff on the ground with help from Officer Guthery.  (*Id.*)  He alleges that plaintiff continued to struggle and kick towards him, so he applied the mandibular angle technique to plaintiff which involves pushing a pressure point under the chin.  (*Id.*)  After applying this technique, plaintiff stopped resisting. (*Id.*)  Hodge denies hitting or striking plaintiff in any way.  (Doc. 25, Ex. 2, Hodge Aff. at 2.)

Defendant Dixon states that after plaintiff had been excused by medical staff, he became obstinate and refused to leave the infirmary when ordered.  (Doc. 25, Ex. 4, Dixon Aff. at 1.) Dixon asserts that Defendant Hodge placed plaintiff in an escort position and plaintiff kicked Hodge on the leg.  (*Id.* at 1-2.)  He contends Hodge immediately took plaintiff to the floor, causing plaintiff's head to strike the floor.  (*Id.* at 2.)  Defendant Dixon alleges that Hodge applied a mandibular angle hold on plaintiff until he stopped resisting.  (*Id.*)  Defendant Dixon denies seeing Defendant Hodge punch or hit plaintiff and states that Hodge did not use more force than necessary to bring plaintiff under control.  (*Id.*)  Defendant Dixon states that since Hodge had the incident under control, he felt no need to leave his seat behind the desk and never touched plaintiff.  (*Id.*)

Defendant Guthery states that he witnessed plaintiff kick Defendant Hodge on the shin. (Doc. 25, Ex. 5, Guthery Aff. at 1.)  In response, Guthery claims he assisted Hodge in placing plaintiff on the ground.  (*Id.* 1-2.)   Guthery states that at no time did anyone hit or kick plaintiff or make threatening remarks to him.  (*Id.* at 2.)  Defendant Guthery denies that Defendant Dixon was physically involved in the incident.  (*Id.*)

Defendant Hodge instructed Nurse Ferris to obtain a body chart on plaintiff and Hodge. (Compl. at 10.) Hodge also called Sergeant Cook to the infirmary to take pictures of plaintiff's face, head, and body. (*Id*.)

Defendant Hodge told Nurse Ferris that after plaintiff kicked him on his left knee, he grabbed plaintiff and the two fell to the floor. (Doc. 25, Ex. 3 at 18.) Defendant Hodge claimed that he struck his right hand on the desk as he fell to the floor. (*Id*.) Nurse Ferris noted contusions on the knuckles of Defendant Hodge's third finger and a pink area on his left knee. (*Id*.) Plaintiff states that the injury to Hodge's hand is consistent with Hodge hitting plaintiff with a closed fist. (Doc. 32 at 3.)

Plaintiff sustained a 1.5 cm laceration above his left eyebrow and a 0.5 laceration to the right corner of his mouth. (Doc. 25, Ex. 6 at 3.) Plaintiff denied any other injuries. (*Id*.) His wounds were cleaned and the laceration over his eyebrow was dressed. (*Id*.) About two hours later, plaintiff was served with a disciplinary for assault on a person with DOC. (Compl. at 10.)

Lieutenant Jerome Gray held the disciplinary hearing. (Compl. at 10.) Lieutenant Gray would not allow plaintiff to see his body chart or the pictures taken of him after the incident. (*Id*.) Lieutenant Gray found plaintiff guilty of the charge. (*Id*.) Plaintiff was sentenced to disciplinary segregation for 45 days and lost canteen, visiting, and telephone privileges for 45 days. (Doc. 25, Ex. 3 at 4.)

Plaintiff reported the alleged assault to Captain Gary Malone but an investigation was not conducted.  (Compl. at 10.)

## IV.  DISCUSSION

### A.    Sovereign Immunity.

To the extent plaintiff's constitutional claims are brought against the defendants in their official capacities for money damages, his claims are due to be dismissed under the doctrine of sovereign immunity.  It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest."  *Id*. at 101.  Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment.  *Id*. at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2  (11th Cir. 1990).

Based on the foregoing, the defendants' motion for summary judgment on plaintiff's claims against them in their official capacities for monetary relief is due to be granted.  The remainder of this report and recommendation will address plaintiff's claims against the defendants in their individual capacities.

B.     **Eighth Amendment – Excessive Force**.

Plaintiff alleges that on November 22, 2012, Defendants Hodge, Dixon, and Guthery "slammed" him to the floor.  (Doc. 32 at 2.)  He further alleges that Defendant Hodge assaulted him by hitting him with closed fists.  Plaintiff's excessive force claims against defendants must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986).  *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive.  These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate.  *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").  The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

## 1.    **Defendants Dixon & Guthery**

Plaintiff does not dispute that on November 22, 2012, he became belligerent and began yelling after Nurse Ferris failed to administer medical treatment to him.  Neither does plaintiff dispute that he was disobeying Defendant Hodge's order to return to

segregation.   Plaintiff states that he merely lifted his leg to adjust his pants when Defendant Hodge accused plaintiff of kicking him and Hodge, Dixon, and Guthery "slammed" him on the floor.   (Doc. 32 at 2.)

Plaintiff alleges that he did not kick Hodge and if he touched Hodge, it was by accident.   Whether plaintiff intended to or not, it is undisputed that Defendants Guthery and Dixon observed plaintiff's foot lift from the floor and make contact with Defendant Hodge's leg and they took action.   Plaintiff's belligerent conduct and failure to comply with direct orders, combined with Guthery and Dixon's observation of plaintiff's foot lifting from the floor and making contact with Hodge's leg, justified their actions in taking plaintiff to the floor.

Moreover, the amount of force used by Defendants Guthery and Dixon was not so unreasonable or extraordinary as to indicate anything but an attempt to compel plaintiff to obey a lawful order and to properly restrain him.   Indeed, a wide range of deference is given to prison officials acting to preserve discipline and security.   *Brown v. Smith*, 813F.2d 1187, 1188 (11th Cir. 1987).   Therefore, Defendants Dixon and Guthery's motion for summary judgment on plaintiff's Eighth Amendment excessive force claims is due to be granted.

### 2. __Defendant Hodge__

After plaintiff was on the floor, he contends that Defendant Hodge put his knee in plaintiff's back and started hitting and punching him about the face and head with his closed fists and repeating, "'You want more?'" (Compl. at 9.)  He claims that Defendant Hodge continued beating him until Hodge became tired.  Plaintiff alleges that Hodge then picked him up from the floor and asked him if he had had enough.  Plaintiff sustained lacerations above his eyebrow and to the left corner of his mouth.  Plaintiff claims Defendant Hodge's injury to his knuckles on his third finger were consistent with Hodge striking plaintiff with his fists.

Plaintiff does not dispute that after he was taken to the floor, he continued to resist. However, construing the facts in a light most favorable to plaintiff, the amount of force used by Defendant Hodge to gain control over plaintiff after he was on the floor far exceeded the amount needed.   Instead, plaintiff claims that Defendant Hodge intentionally and maliciously attacked him. Furthermore, plaintiff was handcuffed behind his back and in leg irons throughout the incident.

On the other hand, Defendant Hodge claims that after plaintiff was placed on the floor, plaintiff continued to struggle and kick towards him, so Hodge applied the mandibular angle technique to plaintiff which involves pushing a pressure point under the chin.  He states that after applying this technique, plaintiff stopped resisting.

Defendants Guthery, Dixon, and Hodge deny that Hodge hit or struck plaintiff in any way.

It is well established that assessing the credibility of the allegations made by the plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1986). The facts presented by both parties show that a genuine dispute exists between plaintiff's and defendants' versions of the facts in connection with the November 22, 2012, incident. Therefore, defendants' motion for summary judgment on plaintiff's Eighth Amendment excessive force claim against Defendant Hodge is due to be denied.

Plaintiff's medical records indicate that he sustained small lacerations above his left eyebrow and to the right corner of his mouth as a result of the incident. Nevertheless, the extent of injury suffered is but one factor to be considered in determining whether the use of force was wanton or unnecessary. *See Hudson*, 503 U.S. at 7. The U.S. Supreme Court in *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force – specifically, whether [the force] was nontrivial and "was applied ... maliciously and sadistically to cause harm." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 7). Even if

plaintiff sustained only a minor injury, his allegations, if proven at trial, would establish that Defendant Hodge's use of force was wanton and unnecessary.

To the extent Defendant Hodge argues that he is entitled to qualified immunity with regard to plaintiff's excessive force claim,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution.... There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  Because plaintiff has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive force claim, Defendant Hodge's motion for summary judgment on the basis of qualified immunity is also due to be denied.

## C.   Eighth Amendment – Failure to Protect

Plaintiff alleges that Defendants Guthery and Dixon looked on as Defendant Hodge held him down with his knee and repeatedly struck plaintiff about the head and face. Plaintiff contends that Defendants Guthery and Dixon failed to stop Defendant Hodge from hitting him.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  It is clear, however, that not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety."  *Farmer*, 511 U.S. at 834; *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

"In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).  It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious," harm that a constitutional violation occurs.  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th  Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he ... draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "the known risk of injury must be a 'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835.

Plaintiff has sufficiently alleged facts to demonstrate that Defendants Guthery and Dixon failed to protect him from Hodge's alleged assault. According to plaintiff, Defendants Guthery and Dixon witnessed Hodge use excessive force against plaintiff but failed to intervene and protect him. This type of allegation, if proven, establishes that

Defendants Guthery and Dixon knew of a substantial danger to plaintiff but were deliberately indifferent to plaintiff's safety. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for non-feasance."); *see also Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986) ("Petitioner's claim, based on respondents' negligence, is quite different from one involving injuries caused by an unjustified attack by prison guards themselves, or by another prisoner where officials simply stood by and permitted the attack to proceed.").

Defendants Guthery and Dixon state in their affidavits that they did not witness Defendant Hodge hit or punch plaintiff and that Hodge used only an amount of force necessary to gain control of plaintiff.  (Doc. 25, Ex. 4, Dixon Aff. at 2; Ex. 5, Guthery Aff. at 2.)

As stated previously, assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson*, 477 U.S. at 255; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  The facts presented by both parties show a genuine dispute over whether Defendants Guthery and Dixon failed to protect plaintiff from Defendant Hodge's alleged use of excessive force on November 22, 2012.

Therefore, Defendants Guthery and Dixon's motion for summary judgment as to plaintiff's Eighth Amendment failure to protect claim is due to be denied.

To the extent Defendants Guthery and Dixon argue that they are entitled to qualified immunity, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, plaintiff's version of the facts – that Defendants Guthery and Dixon were present when Defendant Hodge allegedly assaulted him but failed to intervene and protect him – establishes a constitutional violation. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002); *see also Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986). Second, the duty of an officer to protect inmates in their care from assault by fellow officers had been clearly established for years prior to Guthery and Dixon's alleged failure to intervene and protect plaintiff on this occasion. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993), *as amended*, 14 F.3d 583 (11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("[I]f a police officer,

whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). As such, Defendants Guthery and Dixon's motion for summary judgment on the basis of qualified immunity is also due to be denied.

**D.    Due Process**

To the extent plaintiff complains that his Fourteenth Amendment right to due process was violated because he was not allowed to see his body chart or pictures during his disciplinary proceedings, his claims are due to be dismissed. It is undisputed that Lieutenant Jerome Gray held the disciplinary hearing and made the determination that plaintiff could not obtain these documents during his hearing. Plaintiff has not named Lieutenant Gray as a defendant in this case. Therefore, defendants' motion for summary judgment as to plaintiff's Fourteenth Amendment due process claims is due to be granted.

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** the following:

(1)    Defendants' motion for summary judgment on plaintiff's claims against them in their official capacities for monetary damages be **GRANTED** and the claims be **DISMISSED** with prejudice;

(2)     Defendants Guthery and Dixon's motion for summary judgment on plaintiff's Eighth Amendment excessive force claims be **GRANTED** and the claims be **DISMISSED** with prejudice;

(3)     Defendants Hodge's motion for summary judgment on plaintiff's Eighth Amendment excessive force claim against Defendant Hodge be **DENIED**;

(4)     Defendant Hodge's motion for summary judgment as to plaintiff's Eighth Amendment excessive force claim on the basis of qualified immunity be **DENIED**;

(5)     Defendants Guthery and Dixon's motion for summary judgment on plaintiff's Eighth Amendment failure to protect claims be **DENIED**;

(6)     Defendants Guthery and Dixon's motion for summary judgment as to plaintiff's Eighth Amendment failure to protect claims on the basis of qualified immunity be **DENIED**; and

(7)     Defendants' motion for summary judgment on plaintiff's Fourteenth Amendment due process claims be **GRANTED** and the claims be **DISMISSED** with prejudice.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any**

**contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff.

**DATED**, this 7th day of July, 2014.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge