FILED

2015 Aug-05  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **JAMES ALLEN FORESTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:12-cv-04094-VEH-JEO** |
| | ) | |
| **SERGEANT BRUCE T. HODGE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

---

## MEMORANDUM OF DECISION

On November 22, 2012, plaintiff, James Allen Forester ("Mr. Forester"), was an inmate at the St. Clair Correctional Facility ("St. Clair"), in Springville, Alabama. Sergeant Bruce T. Hodge ("Sergeant Hodge"), Correctional Officers Justin Guthery ("Officer Guthery") and Christopher Dixon ("Officer Dixon") were on duty at St. Clair on November 22, 2012. At approximately 10:00 p.m., Mr. Forester and two other inmates, Jermaine Tillman ("Mr. Tillman") and Jordan Waller ("Mr. Waller") were in the infirmary. All three inmates were handcuffed behind their backs and wore leg shackles. Sergeant Hodge and Officer Guthery were escorting the inmates. Officer Dixon was filling out reports at a desk in the infirmary. After the other two inmates were treated, a nurse said infirmary was over without Mr. Forester having been seen.

Mr. Forester became upset and verbally protested. Sergeant Hodge directed Mr. Forester to leave and return to his cell. Mr. Forester did not comply and protested that he had not been treated. Sergeant Hodge again directed Mr. Forester to leave. Mr. Forester again did not comply. Sergeant Hodge again directed Mr. Forester to go back to his cell. Mr. Forester said he could not. There is no evidence that Sergeant Hodge knew that the reason Mr. Forester could not comply was because his pants leg had gotten caught under his foot, preventing him from walking. Mr. Forester reached down to free his foot and, due to the close proximity of Sergeant Hodge, Mr. Forester's foot, which was clad in prison-issued soft-soled fabric shoes, came into contact with Sergeant Hodge's shin. Sergeant Hodge yelled "He kicked me!" and threw Mr. Forester to the floor.

According to the defendant officers, Officer Guthery came over a distance of about 5 feet and assisted Sergeant Hodge with securing Mr. Forester. Officer Guthery lay across Mr. Forester's legs to keep him from kicking again. Mr. Forester continued to struggle. Sergeant Hodge got on top of Mr. Forester's back and applied a mandibular angle pressure point hold to cause pain so that Mr. Forester would stop moving. Sergeant Hodge then pulled Mr. Forester to his feet and said words to the effect, "Do you want more?" and "Have you had enough?" Officer Dixon never left his desk.

2

According to Mr. Forester, he was totally restrained after he was taken to the ground. Nonetheless, Sergeant Hodge put his knee on Mr. Forester's back and delivered 5 to 7 closed-fist blows to the back of Mr. Forester's head. Officers Guthery and Dixon failed to intervene to stop Sergeant Hodge from hitting Mr. Forester in the head.

Mr. Forester has sued Sergeant Hodge for damages under 42 U.S.C. § 1983 alleging that Sergeant Hodge was acting under color of law and exerted excessive force. Mr. Forester's claims against Officers Guthery and Dixon are also brought under § 1983 and allege that Officers Guthery and Dixon failed to intervene to prevent Sergeant Hodge from using excessive force.

The case proceeded to a non-jury trial. Upon consideration of the evidence and testimony presented, and the arguments of counsel, the following findings of fact and conclusions of law are issued in accordance with Federal Rule of Civil Procedure 52(a)(1) in support of the Court's determination that Mr. Forester has failed to prove his case by a preponderance of the evidence against any of the defendants.

## I. FACTUAL OVERVIEW AND PROCEDURAL HISTORY

Mr. Forester filed this action against Sergeant Hodge and Officers Guthery and Dixon on December 13, 2012. Pursuant to 42 U.S.C. § 1983, Mr. Forester alleged that these defendants deprived him of rights accorded to him by the United States

Constitution. On July 12, 2013, Magistrate Judge John E. Ott ordered the defendants to file a Special Report. (Order, doc. 10). After two requests for extensions of time to file that Special Report were granted, the defendants, on October 11, 2013, filed their Special Report (doc. 25), which the magistrate judge treated as a Motion for Summary Judgment. (*See* Order, doc. 26). Mr. Forester, acting *pro se*, after receiving an extension of time, responded to the Special Report on January 8, 2014 (doc. 32). On July 7, 2014, the magistrate judge issued his report and recommendation (doc. 33), recommending that all of Mr. Forester's claims be dismissed except his claims against the defendants in their individual capacities for excessive force after the takedown (against Sergeant Hodge) and for failure to intervene (against Officers Guthery and Dixon). No objections to the report and recommendation were filed. On August 7, 2014, the undersigned adopted the report and recommendation and dismissed all of Mr. Forester's claims except his claims against the defendants in their individual capacities for excessive force after the takedown (against Sergeant Hodge) and for failure to intervene (against Officers Guthery and Dixon). (Doc. 34). The case proceeded to trial against the defendants on those claims.

## II. TRIAL EVIDENCE AND FINDINGS OF FACT

On November 22, 2012, Mr. Forester was a prisoner housed at St. Clair. All three defendants were at all relevant times on duty as correctional officers. Sometime

before 10:00 pm, Mr. Forester, and inmates Jermaine Tillman ("Mr. Tillman") and Jordan Waller ("Mr. Waller"), were at the infirmary within St. Clair, together with two nurses, Nurse Ferris and Nurse Klinner, and the three defendant officers. Sergeant Hodge's and Officer Guthery's relevant duty at that time was to escort the inmates from the infirmary back to their cells. Officer Dixon's relevant duty at that time was to complete security logs in the infirmary. At all relevant times, all three inmates were handcuffed with their hands behind their backs and also wore leg shackles.

The other two inmates were treated by the nursing staff that night, but Mr. Forester was not. Mr. Forester became irate when Sergeant Hodge told him to go back to his cell even though Mr. Forester had not been treated for a painful infected open wound in his groin. He yelled about the lack of treatment and did not comply with Sergeant Hodge's repeated directives to go back to his cell. Sergeant Hodge put his hand on Mr. Forester's shoulder to get him in escort position, but Mr. Forester spun around and ended up with his back against the wall. Mr. Forester pulled on his pants to free his left foot and his foot came in contact with Sergeant Hodge's left knee. Sergeant Hodge reasonably perceived that contact to be a kick and yelled "He kicked me!" Although Sergeant Hodge was not injured by the kick, he immediately took Mr. Forester to the ground, face first. Officer Guthery ran over to assist Sergeant Hodge

5

because Mr. Forester was still "squirming" and "being combative." Officer Guthery lay across Mr. Forester's legs so that he could not kick again. Sergeant Hodge lay on the upper portion of Mr. Forester's back and, because he was still resisting, Sergeant Hodge, who is right-handed, used his right hand to apply a mandibular pressure point hold to cause Mr. Forester pain. Mr. Forester stopped struggling and lay still. At that point, the incident was over. It lasted at most 15 to 20 seconds. Officer Dixon never left his desk.

Because Officer Guthery was lying sideways across Mr. Forester's legs and Sergeant Hodge was lying on Mr. Forester's back, Officer Guthery could only see up Sergeant Hodge's right side. He could see Sergeant Hodge's right hand, but not his left hand. Both Officer Guthery and Officer Dixon saw Sergeant Hodge use his right hand to apply a mandibular pressure point hold on Mr. Forester. Mr. Forester insists that Sergeant Hodge punched and hit him six or seven times, striking at least some of the blows with his right hand. Both Officer Dixon and Officer Guthery testified that they never saw Sergeant Hodge hit or punch Mr. Forester.

Two body charts of Mr. Forester were prepared, one by Nurse Ferris and one by Nurse Klinner. Collectively, these body charts show a slight laceration above his left eyebrow, a very slight laceration at the right corner of his mouth, and a contusion to the bridge of his nose. A body chart was also prepared of Sergeant Hodge, showing

a contusion to his left knee and contusions to the knuckles of his right hand.

There is no dispute that Mr. Forester was injured, although his injuries were slight. At most, his glasses were slung off his body and he received a small shallow laceration above his left eyebrow, a smaller laceration at the right corner of his mouth, and a contusion to the bridge of his nose.

Sergeant Hodge completed an incident report and admitted that, although St. Clair policy required that photographs be uploaded with any incident report involving injuries to an employee or a prisoner, he did not upload any photographs of himself or Mr. Forester with the incident report. Sergeant Hodge stated that no photographs were taken of him, which the court credits because Sergeant Hodge also states he was not injured. However, in light of Sergeant Hodge's admission that Mr. Forester was injured, that photographs of injured inmates were taken in 2012, Mr. Forester's consistent statements under oath (from the December 2012 date of his initial complaint forward) that photographs were taken of him, and the fact that the St. Clair policy and procedure manual[1] required that photographs of injured prisoners be taken, the court credits Mr. Forester's testimony that pictures of his injuries were taken.[2]

---

[1] Mr. Forester subpoenaed for trial the St. Clair policy and procedure manual in effect on November 22, 2012. By producing the manual they produced, the defendants waived any argument that such manual was not in effect as to all policies relevant to the issues in this case.

[2] The pictures were requested but not produced by defendants.

The court notes the multiple inconsistencies in various statements made by Sergeant Hodge and Officer Guthery as written in Sergeant Hodge's body chart, Sergeant Hodge's Incident Report, Sergeant Hodge's affidavit, Officer Guthery's affidavit, and their testimony at trial. However, the court finds that none of the inconsistencies are about facts that are important enough to cause the undersigned to discredit the testimony of Sergeant Hodge and Officer Guthery as to Sergeant Hodge's actions after the takedown, especially in light of the fact that Officer Dixon, who did not even touch Mr. Forester, and who was not otherwise shown to be unreliable, corroborated the testimony of Sergeant Hodge and Officer Guthery.

Furthermore, the court notes that Mr. Forester's injuries consisted of a contusion to the bridge of his nose and slight lacerations above his left eyebrow and at the right corner of his mouth. The court further notes Mr. Forester's own testimony that his glasses were "slung" off his face and his nose hit the floor during the takedown, causing the contusion to Mr. Forester's nose. The court further notes that both Mr. Tillman and Mr. Forester testified that Sergeant Hodge put his knee on Mr. Forester's back and delivered multiple closed-fist blows to the back of Mr. Forester's head.

The court credits the version of the facts regarding Sergeant Hodge's acts as stated by Sergeant Hodge, Officer Guthery, and Officer Dixon at trial, and

accordingly discredits the testimony of Mr. Forester and Mr. Tillman to the extent that such testimony is in conflict with such testimony.[3] More specifically, the undersigned credits the testimony of Sergeant Hodge, Officer Guthery, and Officer Dixon that Sergeant Hodge did not hit or punch Mr. Forester after Mr. Forester was taken to the ground. Further, Mr. Forester admits that the contusion to his nose was caused by the takedown itself, and so was not caused by the alleged blows. The court finds that Mr. Forester has failed to show, by a preponderance of the evidence, that any of his injuries were caused after the takedown, as opposed to by the takedown itself.[4]

### III. CONCLUSIONS OF LAW

Section 1983 provides a vehicle for bringing claims for constitutional violations committed under color of state law. To prevail, Mr. Forester must

---

[3] The undersigned is very concerned about the content of a "manifesto" advocating cruel treatment of, and indicating a callous disregard for the very humanity of, inmates at St. Clair that was posted by a St. Clair correctional officer, Brian Fife, and reposted by Officer Guthery on Officer Guthery's facebook page. No such attitude was shown to be attributable to Sergeant Hodge or Officer Dixon, however. Accordingly, the undersigned finds that Officer Guthery's posting is insufficient on these facts to discredit Officer Guthery's testimony in this case.

[4] In reaching this conclusion, the court takes pains to state that it gives no credence to the testimony of David Pavlakovick, M.D., who was called by the defendants as an expert "in the field of correctional medicine." (Doc. 65 at 2). While on the witness stand, Dr. Pavlakovick admitted that he signed not one but two Rule 26 reports without reviewing or even receiving a copy of Mr. Forester's medical file even though both reports stated that "All of [the] opinions are expressed with a reasonable degree of medical certainty based upon ... education, training, and experience in conjunction with [a] review of Mr. Forrester's medical file."

demonstrate both that the defendant officers deprived him of a right secured under the United States Constitution or federal law and that the deprivation occurred under color of state law. *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir.1998). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001) (quotation omitted).

The issue of whether any of the defendant officers acted under color of state law is not contested. Nor do any of the defendant officers dispute that, under Mr. Forester's version of the facts, Sergeant Hodge violated Mr. Forester's constitutional right to be free from cruel and unusual punishment and Officer Guthery and Officer Dixon violated that right by failing to intervene to stop Sergeant Hodge. Finally, the court finds that Mr. Forester has established, by a preponderance of the evidence, that he sustained the following injuries: a contusion to his nose, a slight laceration above his left eyebrow, and a very slight laceration at the right corner of his mouth. Thus, the remaining issue for this court to decide is, "Did Sergeant Hodge maliciously and sadistically hit Mr. Forester while Mr. Forester was constrained on the floor?" If the answer to that question is "yes," then the court must decide whether Mr. Forester has shown that his injuries were caused by those blows and whether Officer Guthery or Officer Dixon failed to intervene to prevent such action by Sergeant Hodge.

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). An excessive force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." *Thomas v. Bryant*, 614 F.3d 1288, 1305 (11th Cir.2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (other citations omitted).

The Supreme Court has held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

The factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials, 4) any efforts made to temper the severity of the response, and 5) the extent of the injury suffered by the inmate.

*Hudson v. McMillian*, 503 U.S. at 7.

The court finds that the force used by Sergeant Hodge, a mandibular pressure point hold, to subdue Mr. Forester after the takedown was not excessive under the circumstances. Application of the hold was needed, as Mr. Forester continued to struggle. The hold stopped once Mr. Forester stopped struggling. The hold did not cause any injuries to Mr. Forester.

## IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED AND ADJUDGED** that plaintiff James Allen Forester has failed to show that defendant Bruce T. Hodge used excessive force against him and has failed to show that Justin Guthery or Christopher Dixon failed to intervene (because no intervention was needed). Accordingly, **JUDGMENT** is hereby entered in favor of Bruce T. Hodge, Justin Guthery, and Christopher Dixon. Mr. Forester shall take nothing and his claim is hereby **DISMISSED WITH PREJUDICE**.

**DONE** this the 5th day of August, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge